(51 South. 1021.)

No. 17,697.

CASTERA'S HEIRS v. NEW ORLEANS
LAND CO.

(March 14, 1910.   Rehearing Denied April 11,
1910.)

*(Syllabus by the Court.)*

1. DEEDS (§ 38*)—DESCRIPTION OF PROPERTY
—TITLE.

In order to be good and serve as the basis
of property rights, a title must sufficiently de-
scribe the property so as to identify it, and
when, as in the case of defendant's title, it
fails to describe land claimed by the defend-
ants, it will not serve to avail them against
plaintiffs who possess a title to the land that
is the subject of the suit.

[Ed. Note.—For other cases, see Deeds, Cent.
Dig. §§ 65–79;  Dec. Dig. § 38.*]

2. PRESCRIPTION. — TITLE  TRANSLATIVE  OF
PROPERTY—DESCRIPTION OF LAND.

In order to acquire property by means of
the prescription of 10 years, it is necessary that
the one pleading this prescription should pos-
sess by a title translative of property, and one
of the essential requisites of this title is that
it should correctly and properly describe the
land so as to identify it.

[Ed. Note.—For other cases, see Adverse Pos-
session, Cent. Dig. §§ 463–467;  Dec. Dig. §
80.*]

3. PRESCRIPTION—POSSESSION—EVIDENCE.

Possession is one of the essential elements
of the 10 years' prescription, and the evidence
does not show that either the defendants or the
authors of their title were in possession for
10 years prior to the filing of the suit, and so
this prescription cannot avail them.

[Ed. Note.—For other cases, see Adverse Pos-
session, Dec. Dig. § 14.*]

Appeal from Civil District Court, Parish
of Orleans;  T. C. W. Ellis, Judge.

Action by the heirs of Louis Castera
against the New Orleans Land Company.
Judgment for plaintiffs, and defendant ap-
peals.    Affirmed.

Chas. Louque, for appellant.    Wm. Win-
ans Wall, for appellees.

BREAUX, C. J.    Plaintiffs brought this
suit to recover part of 23 certain squares of
land in the Second district of New Orleans,
bounded by Bayou St. John, Scott and
Brooks streets, and in the rear by property
formerly owned by the Canal Bank.

This land measures 189 feet on Bayou St.
John by a depth hereafter stated.

Plaintiffs set up a chain of title back to
the year 1853.

In one of these titles, J. F. Beugnot was
the vendor and Louis Castera the vendee.
The deed is dated June 16, 1862.

Plaintiffs are the heirs of Louis Castera.

There are a number of deeds going back
to the government.  There is no necessity of
detailing them here at length.

The defendant pleaded the prescription of
10 years and 30 years.

It alleged that, in exchange with the New
Orleans & Western Railroad Company, it be-
came the owner of certain lands, which it
avers is the same land which plaintiffs
claim.  The act of exchange is dated June
18, 1895.

In a supplemental answer, the defendant
alleged that on January 15, 1907, it bought
lands from George Fredericks.

The Fredericks' lands were formerly own-
ed by Beugnot.

Respondent in the alternative claims a
large amount for improvements made by it,
as it alleged, and also an amount for taxes
it claims to have paid.

By the act of exchange above referred to,
the New Orleans & Western Railroad Com-
pany transferred to the New Orleans Recla-
mation Company the tract of land fronting on
Bayou St. John and running back to the
property of the New Orleans Banking Com-
pany, measuring 3 arpents front on the bay-
ou by a depth of 45 arpents, and 41 feet on
the land separating it from the property be-
longing to a Mr. Gordon, and 45 arpents and
162 feet on the other side of the line, the
whole as per plan of De Armas, bearing date
of February 22, 1850, deposited in the office
of T. A. Stark, notary.

The contention of defendant is that the

foregoing plan includes the squares 915, 916, 931, 932, 933, 934, 935, 936, and 937, as a part of the land in controversy in the case of Shelly et al. v. Friedrichs, 117 La. 679, 42 South. 218.

These last-numbered squares were recovered by the plaintiffs in the Shelly suit, and they are now the property of the Castera heirs, plaintiffs in the present suit.

The whole of the property had belonged to the Castera heirs. It was sold at tax sale and bought at that sale by George Fredericks, the defendant in the present suit.

The owners whose property had been thus sold brought suit to recover the whole property.

Part of it was correctly described by the tax collecting department, and by the said act of adjudication at tax sale the property passed to the adjudicatee, George Fredericks.

The remainder of the property in question, also sold at tax sale, was so imperfectly described that it could not be identified. The court held that it remained the property of the plaintiffs, the Castera heirs.

Fredericks sold all the property that he had recovered in the suit to the New Orleans & Western Railroad Company.

The New Orleans & Western Railroad Company having acquired that property, it claimed that it held title to the whole property; that which it had bought, and that which it did not buy.

This claim was based upon title back to the government, as defendant contends.

The differences that have arisen between plaintiffs and defendant arise from the imperfect description of the land. In other words, the land claimed by defendant is not within the limits of the land bought by the New Orleans Land Company from the New Orleans & Western Railroad Company.

Mr. Pilie, a surveyor and civil engineer, testified that the two properties—that is, the property claimed by the defendant and the property claimed by the plaintiffs—are distinct and different from each other; that the squares numbered as above formed part of a tract of land four arpents fronting on Bayou St. John by a depth to the New Orleans Bank property. This land, as described, is commonly known as the "Beugnot property." It was sold to Castera by the former by deed before Laresche, notary, many years before.

Pilie, as a witness, insisted that the plaintiffs' tract was on the Allard tract, and the land of defendant is what is known as the "Alpuente tract."

In several of the deeds, the name of Gordon appears as the owner of the tract of land in which is the Allard tract.

This is evidently a mistake.

The Louis Allard tract subsequently became the Beugnot tract, according to this witness, and the Alpuente, Demorouelle, and other tracts are situated beyond in the direction of the lake.

In the act of exchange, above referred to, the Alpuente tract is referred to, as well as the Gordon tract, as boundaries.

It seems that these are misleading boundaries and only add to the difficulty in locating the lines.

It further appears that the Alpuente tract was at one time claimed by McDonogh; it was also in the name of Henry Cronan. In a suit between them, it was declared that Cronan was the owner.

After having considered all of the evidence, we have not found it possible to locate plaintiffs' tract in the Cronan tract. If defendants' contention is correct, that would be the correct locus of the land.

We will state further, in regard to these tracts of land, that the Fredericks or Beugnot tract is the only land ever subdivided into squares or streets dedicated to the public in that vicinity. The other lands referred to are large tracts or solid bodies.

In addition to the numbered squares given above, the boundaries are given. As, for instance: Scott and Brooks streets at one end, Milne, and at the other Bayou St. John, and to that way this land is susceptible of easy identification.

Carl Friedricks and George F. Friedricks were heard as witnesses, and testified that five or six years before this suit was instituted George Friedricks was in possession of the land divided into squares, referred to above.

We have not found that defendant had even civil possession of the property.

During the time that Friedricks was in possession, he paid the taxes on the property.

Prescription of 10 years, as a mode of acquiring title, requires more than a mere indefinite claim without local habitation and a name. It requires that possession be taken by one who has good reason to believe himself the owner with title.

If one takes possession of a tract of land under a deed which does not contain a description sufficiently correct to enable an average surveyor, in point of ability, to identify it, he cannot claim to be a possessor in good faith.

Mr. Pilie, surveyor, testified in this case that the description in one of the titles under which defendant claims is not sufficiently clear to identify the land by it.

It is necessary that the description should be sufficiently complete to serve the purpose of identification.

In the chain of titles in this case, there are deeds under private signature of very ancient dates.

They were introduced in evidence without proof of the genuineness of the signatures. Objection was urged to their admissibility on the ground that they did not of themselves make proof of the genuineness of the signature.

They are mentioned in deeds of transfer of property of dates subsequent, and thereby they were made admissible as proof.

To conclude: Admitting all that defendant claims in regard to the origin of its title, it still failed to establish that it has had possession for 10 years prior to the suit.

The wild, impassable lands were not valuable. Absent owners thought little of them. They were sold at tax sale. Descriptions were made by assessors and others. Surveys were indifferently made. Names were mentioned of owners of adjacent lands not known.

As to title: It appears that plaintiffs owned the tract they claimed. Their ownership goes back at least to the Beugnot title. It passed into the hands of a purchaser at tax sale, who testified as to his possession of this land.

. After the tax deed was decreed null, the land reverted to the plaintiffs.

The defendant took possession at one time under one title, but not title to the land in question.

Despite the confusing surveys and maps, it remains that defendant's title goes back to the Alpuente tract, while the plaintiffs' title goes back to the Allard tract.

The owner of land under the Allard title cannot be heard to claim the Alpuente title, and vice versa.

The defendants reconvened and asked that they be paid for the betterment due to their energy and enterprise.

Until the advent of railroads, these were lost lands. The defendant company and others in interest have built levees; made roads and drains. They have redeemed the land. It is now high and valuable.

With the evidence before us, there is no possibility of allowing this claim. It is not sufficiently evident to whom plaintiffs owe for the improvements, and it does not appear in what respect or to what extent the gen-

eral benefit derived is shared by plaintiffs.

An amount is also claimed in reconvention for taxes. This amount, likewise, is not sustained by the evidence. There is not direct proof that defendants have paid taxes on these particular squares.

To go back for a moment to the title, we will state:

There are some expressions in the deeds and some of the testimony brings out the facts somewhat differently from those heretofore found by us. In other words, titles seem to deflect from the regular line of title. But, after a careful consideration, we arrive at the conclusion that they are derived as before mentioned, and that an accidental erroneous expression cannot be taken as basis for title.

It is, therefore, ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, affirmed, at appellant's costs.