(113 So. 772)

No. 28021.

BOARD OF LEVEE COM'RS OF ORLEANS LEVEE DIST. v. ORANGEDALE COLONY CO. et al.

May 23, 1927. Rehearing Denied July 11, 1927.

*(Syllabus by Editorial Staff.)*

1. **Evidence** ⬤⟲23(1)—It is common knowledge that levee boards accepted insignificant price for lands donated by state.

It is common knowledge, of which Supreme Court takes judicial notice, that levee boards of the state were anxious to dispose of lands donated to them in order that they might be placed on assessment rolls, and hence were willing to accept and did accept very insignificant price therefor.

2. **Eminent domain** ⬤⟲202(1)—Expropriation; price paid levee board for land donated by state cannot be accepted as fixing its value in expropriation proceeding (Act No. 99 of 1924).

Price paid levee district for lands donated by state cannot be accepted as fixing value of land at date of sale or at time of expropriation suit by commissioners of levee district to acquire land for spillway or water weir, under Act No. 99 of 1924; it being common knowledge that such lands were disposed of by levee boards for insignificant price in order that they might be placed on assessment roll.

3. **Eminent domain** ⬤⟲205—Expropriation; evidence in expropriation proceeding held to sustain finding fixing value of land at $1.50 per acre (Act No. 99 of 1924).

In expropriation suit, under Act No. 99 of 1924, authorizing spillway or water weir on the Mississippi river, evidence *held* to sustain jury's finding fixing value of land at $1.50 per acre.

4. **Eminent domain** ⬤⟲205—Expropriation; evidence held not to support jury's finding on amount of acreage for which recovery should be allowed in expropriation suit (Act No. 99 of 1924).

In expropriation suit by commissioners of levee district under authority of Act No. 99 of 1924, evidence *held* not to support finding of jury on amount of acreage for which recovery should be allowed.

5. **Estoppel** ⬤⟲32(1)—Owner held not estopped from claiming recovery for exact acreage in expropriation proceedings because of estimates in patents and various deeds (Act No. 99 of 1924).

Acreage as stated in patents and various deeds, being only an estimate, *held* not to estop owner from claiming pay for exact acreage as shown by actual survey made at instance and under direction of levee board seeking to expropriate such land under authority of Act No. 99 of 1924.

Appeal from Twenty-Fifth Judicial District Court, Parish of Plaquemines; J. Claude Meraux, Judge.

Expropriation suit by the Board of Levee Commissioners of the New Orleans Levee District against the Orangedale Colony Company and others. From the judgment, defendants appeal, and plaintiff answered the appeal and prayed relief therein. Judgment amended, and, as amended, affirmed.

Thomas E. Furlow, of New Orleans, for appellant Orangedale Colony Co.

Carroll & Carroll, of New Orleans, for appellant Union Homestead Ass'n.

Benjamin T. Waldo, of New Orleans, for appellee.

THOMPSON, J. This is an expropriation suit and is brought under Act 99 of 1924 which act authorized the board of commissioners of the Orleans levee district to construct on the east bank of the Mississippi river in the parish of Plaquemines a spillway or water weir and to acquire by purchase, donation, or expropriation lands or other property needful for the purpose intended by the statute.

The land sought to be expropriated is fractional sections · 1, 2, and 11, township 18 south, range 15.

The land is owned presently by the defendant, is located within the spillway area, is admittedly needed by the levee board, and is subject to expropriation.

The only issue between the parties is as to the number of acres comprised within the three fractional sections and the value of the land per acre.

The case was tried by a jury, which fixed the area of the land at 852.19 acres and the valuation at $1.50 per acre.

The defendant has appealed and claims that the judgment should be increased both as to the acreage and as to the value.

The plaintiff has answered the appeal and prays that the acreage found by the jury be sustained, but that the price per acre be reduced to 25 cents.

The land is unimproved sea marsh land and unfit or unsuitable for agricultural purposes. It possesses some value for trapping purposes, as some fur-bearing animals have been found upon it.

The attorney for the levee board, to sustain his demand for reduction of the price, relies on the testimony of two witnesses and on the fact that the vendor of the present owner purchased the land at 25 cents per acre.

The land was purchased by M. C. Baker from the Grand Prairie levee district in April, 1911, at 25 cents per acre, but that fact of itself is not sufficient to show that the land at that time was not worth much more than the price paid for it.

[1] The land had been held by the levee board since 1905. It was not subject to taxation and produced no revenue. It is common knowledge of which we may take judicial notice that many of the levee boards of the state were anxious to dispose of the lands donated to them by the state in order that such lands might be placed on the assessment rolls; hence such boards were willing to accept and most of them did accept a very insignificant price for the lands.

[2] We repeat, therefore, that the price Baker paid for the land cannot be accepted as fixing the value of the land at the date of sale or at the present time.

The two witnesses referred to do not fix the value at 25 cents per acre as counsel contends. The witness Ansardi is a farmer and a trapper and was not familiar with the price of the lands in question. He said that he had no idea what they were worth. When asked by plaintiff's counsel if the lands were worth $1 an acre, the witness said he thought that would be plenty.

The other witness, Salovasto, said the land was worthless to him and that it was not worth paying taxes on.

As opposed to this, it may be stated that the land was bought in by the Union Homestead Association at a sheriff's sale under a fi. fa. against Baker at the price of $450 and that company, on July 3, 1925, sold the land to the Orangedale Colony Company at the price of $3,000.

The petition alleges that the plaintiff had agreed to pay the defendant the price of $3 per acre for said lands and that defendant had accepted the same.

It was further alleged that the plaintiff tendered this price to the defendant and which was in accordance with a written option held by the plaintiff from defendant for the purchase of said lands at $3 per acre.

[3] Under these circumstances we think the jury was extremely fair with the levee board in fixing a value at $1.50 per acre and that plaintiff is without just cause of complaint on that score.

Nor do we feel justified in increasing the value as fixed by the jury. The defendant declined or failed to carry out its agreement with the plaintiff to make an unincumbered

deed to the land at the price of $3 per acre; hence the question of value was left open and properly submitted to the jury.

The valuation as fixed by the jury should be adopted by this court.

[4] We are unable, however, to agree with the jury on the amount of acreage for which the defendant should be paid. The only theory on which the jury could have acted in fixing the acreage as it did was the fact that the patents and the deed which Baker acquired from the Grand Prairie levee district called for that acreage.

The evidence shows conclusively that Baker acquired all of fractional sections 1, 2, and 11. The petition in this case asks that all of fractional sections 1, 2, and 11 be expropriated and the prayer of the petition is that the said lands as hereinbefore described and designated, and as shown on the plan thereof hereto annexed, with the depth and area and location therein expressed, be adjudicated to your petitioner.

It is true the second judgment signed omits the southwest quarter of section 11, but the judgment adjudges to the plaintiff all of the lands set forth in the petition and in the plan annexed as part thereof.

There is no room for doubt, therefore, that the levee board claimed, and the judgment has awarded to it, all of the land embraced in fractional sections, 1, 2, and 11.

The plan referred to is a map of a survey made by Frank T. Payne, civil engineer under the direction of Col. Marcel Garsand, chief engineer of the board of levee commissioners of the Orleans levee district. This map and survey shows that fractional sections 1, 2, and 11 contain 1,096.58 acres.

This survey was approved by Col. Garsand and chief engineer and who testified on the trial of this case that the survey was correct and that according to that survey there is land in sections 1, 2, and 11 within the spillway area amounting to 1,096.58 acres.

It appears that these lands had never been surveyed previously and that the actual acreage was undetermined. The survey made by the levee board was for the purpose of fixing the exact acreage with the view of purchasing or expropriating said lands.

[5] The acreage as stated in the patents and various deeds was nothing more than an estimate, and certainly could not be binding on the defendant and estop it from claiming pay for the exact acreage as shown by an actual survey made at the instance and under the direction of the levee board and which is certified as being correct by the chief engineer of the board.

As an evidence that the patents and the several succeeding deeds were a mere estimate or approximation of the acreage reference may be had to the act of sale executed to the Grand Prairie levee district by the state auditor and register of the land office. In that deed the acreage in the three fractional sections was *estimated* at 1,220 acres.

We are unable to conceive upon what theory of law, justice, or equity the levee board should be permitted to take all of the three fractional sections which admittedly contain 1,096.58 acres and pay for only 852.19 acres.

For the reasons assigned, the judgment is amended by increasing the amount from $1,278.14 to $1,644.87 and, as amended, the said judgment is affirmed.