(114 So. 98)

No. 28318.

MATTHEWS v. OLLA STATE BANK et al.

July 11, 1927.  Rehearing Denied Oct. 4, 1927.

*(Syllabus by Editorial Staff.)*

1. Guardian and ward ⬅➔24—Tutorship; tutor emigrating to another jurisdiction ipso facto forfeits tutorship.

Tutor who emigrates to another jurisdiction and acquires a domicile there ipso facto forfeits tutorship, and judgment removing him from tutorship is unnecessary.

2. Infants ⬅➔78(1)—Minors; curator ad hoc should be appointed to represent minors and not tutor who forfeited tutorship by emigration to another jurisdiction (Code Prac. art. 964).

Under Code Prac. art. 964, on tutor forfeiting tutorship by emigrating to another jurisdiction, curator ad hoc should be appointed to represent minors and not the tutor.

3. Infants ⬅➔105—Minors; judgment against minors held nullity, where curator ad hoc was appointed to represent tutor who had forfeited tutorship.

Where curator ad hoc was appointed to represent tutor who had forfeited tutorship by emigrating to another jurisdiction, judgment obtained against minors was an absolute nullity, as curator ad hoc was without authority to represent them.

4. Mines and minerals ⬅➔74—Assignee of oil lease held authorized to reject title, where judgment against minors correcting defect was nullity.

Where abstract of title showed that judgment correcting misdescription in deed, which was obtained against minors, was a nullity because curator ad hoc was appointed to represent absentee tutor instead of minors, assignee of oil lease was not required to accept title, since it was suggestive of litigation.

5. Adverse possession ⬅➔54—Prescription; disclosure of erroneous description in deed before expiration of 30 years held to preclude claim of prescription of 30 years.

One taking possession of land under deed containing erroneous description cannot force title by prescription of 30 years upon another, where defect was pointed out and title rejected before expiration of such 30 years.

6. Adverse possession ⬅➔70—Prescription; holding of possession as owner under deed translative of property is necessary for prescription of 10 years.

To acquire title under prescription of 10 years, one must hold possession as owner under deed translative of property held.

7. Adverse possession ⬅➔80(1)—Prescription; one holding possession under deed containing erroneous description cannot acquire title by 10-year prescription.

One holding possession under deed erroneously describing property cannot acquire title under 10-year prescription, since he does not hold under deed translative of property held.

8. **Mines and minerals** ☜➟74—**Assignee of oil lease is not required to accept title, where defect was not corrected by agreed time.**

Assignee of oil lease having largely a speculative value will not be required to accept title where defect was not cured until after expiration of time agreed upon.

9. **Appeal and error** ☜➟1118—**Judgment is not changeable as between appellees.**

A judgment cannot be changed as between appellees.

10. **Appeal and error** ☜➟172(3)—**Demand for interest is not maintainable for first time on appeal.**

A demand for interest cannot be made for first time on appeal.

Appeal from Eighth Judicial District Court, Parish of La Salle; F. E. Jones, Judge.

Action by O. F. Matthews against the Olla State Bank and another. Judgment for defendants, and plaintiff appeals. Affirmed.

Thornton, Gist & Richey, of Alexandria, for appellant.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellees.

OVERTON, J. This is a suit to recover from the Palmer Corporation and the Olla State Bank, in solido, the sum of $8,000, with 5 per cent. per annum interest thereon from judicial demand until paid. The suit is based upon allegations showing that Dr. O. F. Matthews, the plaintiff herein, was granted a mineral lease, of date July 1, 1923, by W. C. McBroom, on the N. W. ¼ of section 16, Tp. 10 N., R. 2 E., situated in the parish of La Salle; that plaintiff executed an assignment of this lease to the Palmer Corporation for $8,000, payable cash; that, pursuant to an agreement between plaintiff and the Palmer Corporation, the act of assignment, together with the $8,000 to be paid for it, was placed in escrow in the Olla State Bank; that, under and by virtue of the escrow agreement, plaintiff bound himself to furnish an abstract of title within five days, showing

a good and merchantable title in plaintiff; that the Palmer Corporation agreed to have the abstract examined by an attorney, and, if the title proved to be good and merchantable, the Olla State Bank should pay to plaintiff the aforesaid sum of $8,000, which was delivered to it by the Palmer Corporation; that the Olla State Bank accepted delivery of the assignment and money; that plaintiff delivered to the Palmer Corporation, within the time fixed, a complete abstract of title to the land described in the assignment, showing his title to the minerals under said land, and that the title of plaintiff to the rights so assigned by him is good and merchantable, but that the Palmer Corporation and the Olla State Bank, without just reason or excuse, refuse to pay him the said sum of $8,000.

The defense of the Palmer Corporation is that plaintiff did not tender it a good and merchantable title within the time fixed by the contract, and hence that it was not called upon to accept the title and order the bank to pay the $8,000 to plaintiff. The defense of the Olla State Bank is substantially that it was at a loss to determine to which of the parties to pay the money, for the reason that, since accepting the money under the escrow agreement, both parties claimed it, and that, to avoid all further responsibility in the matter, it desired to deposit the money in court, together with the instruments deposited with it in escrow. The Palmer Corporation, in addition to the foregoing defense, in an amended answer, asked for judgment against the bank, ordering it to pay it the $8,000, with legal interest thereon from May 28, 1925, which is the day following the one upon which demand was made upon it for payment.

The escrow agreement, offered in evidence, shows what plaintiff offered to do with reference to furnishing an abstract of title to the land upon which the lease, which the Pal-

mer Corporation had agreed to purchase, was granted, and what the Palmer Corporation bound itself to do in connection therewith. So far as the agreement is pertinent to the case, it reads as follows:

"Party of the first part (plaintiff) shall furnish and deliver an abstract of title to the land described in said oil and gas lease, or (and) assignment, within 5 days from date hereof, showing good and merchantable title to said lease to be vested in party of first part; and party of second part (the Palmer Corporation) shall have said abstract examined and title to said lease passed upon by a competent attorney within five days from date said abstract is delivered to the party of second part. If said title is good and merchantable, then said bank shall pay said sum to party of the first part, and shall deliver said lease (and) assignment thereof to party of the second part immediately. The opinion of said attorney shall be in writing, and, if he shall hold said title is defective, then all defects shall be clearly indicated and set forth by him in writing. If said title is defective, then party of first part shall have 15 days from the date said attorney's opinion is delivered to him within which to cure said defects, and, if he should fail to cure said defects, then said lease (and) assignment thereof shall be delivered by said bank (Olla State Bank) to party of the first part, and said sum of money shall be delivered and paid over by said bank to party of second part immediately."

Within five days after the escrow agreement had been signed, in fact almost immediately thereafter, plaintiff delivered to the Palmer Corporation an abstract of title to the land. Within five days after delivery of the abstract, the attorney selected by the Palmer Corporation delivered a written opinion on the title to plaintiff, pointing out seven defects in the title, most of which were of a minor nature, and apparently were cured within the fifteen days allowed by the contract for the curing of defects. Two of the defects, which the Palmer Corporation contends exist, and which its attorney pointed out, were not cured within that time. These two are relied upon by the Palmer Corporation in this court to defeat plaintiff's demand.

It is necessary to consider only one of them. That defect, with the suggestions made concerning it, reads as follows:

"When the present owner of the property purchased the same from F. M. Mills there was a misdescription in the deed, which erroneously described the property conveyed as being the N. W. ¼ of W. ½ of section 16, instead of the N. W. ¼ of section 16. This misdescription has been corrected by quitclaim deeds, except as to the interdict, Miss Ceceil Mills, and the minors of Mrs. Kate Boynton. Page 9 (27) of the abstract shows that on November 15, 1924, a suit was filed for the purpose of obtaining a corrective instrument from said last-named parties. The petition shows that M. A. Boynton, the tutor of said minors, moved to Arkansas after having been appointed tutor and when he did this the tutorship became vacant, just as though no tutor had been appointed, and therefore, when a curator ad hoc was appointed, he should have been appointed to represent the minors and not to have represented the absentee, M. A. Boynton, tutor for the minors. The judgment which was rendered on this petition is dated December 11, 1924, and a devolutive appeal might be taken from said judgment within one year from date thereof or a suit might be brought to set aside said judgment as a nullity for the reason aforesaid. The situation as presented is suggestive of litigation, and we think new proceedings should be instituted for the purpose of obtaining a valid judgment correcting the description aforesaid. The order of court appointing the curator ad hoc is shown on page 13 (87) of the abstract, and the defect as above pointed out is that the absentee and not the minors was brought into court. We realize that this is a technical defect, but, in view of the fact that no prescription has run against same, we think that the matter should be corrected in the manner above set forth."

Prior to the rendition of the foregoing opinion, the widow, and each of the heirs, who was sui juris, of F. M. Mills, executed a deed correcting, in so far as they were concerned, the error in description, mentioned in the foregoing opinion. The judgment against the insane person, Miss Miller, who does not appear to have been formally interdicted, and against the tutor for the Boynton minors was intended to correct the description as to them. Complaint is not made that it did not

have that effect as to Miss Miller, but it is to be considered whether it had that effect as to the Boynton minors.

[1-4] The facts stated in the opinion by the attorney for the Palmer Corporation are correctly stated, and, in our view, so is the law. Where the tutor, as was the case here, goes to another state, and acquires a domicile there, he ipso facto forfeits the tutorship, and ceases to be the tutor of the minors, as though he had died. In such case, there is no necessity for a judgment removing him from the tutorship. Succession of Cass, 42 La. Ann. 381, 7 So. 617; Succession of Bookter, 18 La. Ann. 157; C. C. art. 314. The curator ad hoc should have been appointed to represent the minors, and not the tutor of the minors, who had ceased to be such. C. P. art. 964. As it was, the minors were in no sense before the court. It does not appear that they made any appearance through any one authorized to represent them. The judgment, therefore, is an absolute nullity as to them. It might have been annulled on appeal, for, when the defect was pointed out, there was still time within which to appeal. It might be annulled, even after the lapse of that period, in a direct action, and, since the defect is one patent on the face of the record, the judgment might be successfully attacked collaterally. Therefore thus far it does not appear that the Palmer Corporation was called upon to accept the title to the oil lease. The title was suggestive of litigation, and this might well have followed had the title been accepted, and the land, on which the lease was granted, been developed into an oil field.

[5-7] But plaintiff contends that, at the time the defect was pointed out, and at the time the title was rejected, that McBroom, his lessor, had had actual possession of a part of the land for nearly 30 years, and of the remainder for more than 30 years, without any one's asserting an adverse claim to any part of it. The record discloses that F.

M. Mills, who we infer was the grandfather of the Boynton minors, executed, on November 4, 1895, the deed to McBroom, containing the erroneous description, mentioned above. Soon after McBroom purchased, he took possession of the land, which he claims was intended to be conveyed, and was still holding possession at the time the defect was pointed out, and at the time the title to the rights granted by the lease was rejected, but lacked, on those dates, a few months of having held possession for 30 years. It therefore cannot be said that McBroom held, as owner, adversely to Mills and the Boynton heirs for 30 years, when the defect was pointed out or when the title was rejected. Hence the prescription of 30 years, by which title is acquired, had not then run. The only remaining prescription that could possibly be of avail to McBroom or to plaintiff, in a suit by the Boynton minors to recover their interest in the land, is the prescription of 10 years. But to acquire title under that prescription one must hold possession, as owner, under a deed translative of the property held. One who holds such possession, under a deed which erroneously describes the property held, does not hold under and by virtue of a deed translative of the property held. Albert Hanson Lumber Co. v. Angelloz, 118 La. 861, 43 So. 529. Therefore, at least so far as the deed, because of the erroneous description, excludes a part of the land claimed by plaintiff's lessor, McBroom, the prescription of 10 years was not applicable. Hence, all that remained to be done was to reform the deed in such a manner as would be binding on the Boynton minors, by correcting the description of the property, which it purports to convey.

[8] McBroom, very shortly after the defect was pointed out by the attorney for the Palmer Corporation, brought another suit against the Boynton minors to correct the defect in the description. A curator ad hoc

was appointed to represent the minors. An answer was filed by him, and judgment was rendered correcting the description. The judgment was not obtained until several days after the expiration of the 15-day limit fixed in the contract for the curing of defects, it is said, because the judge was absent holding court in another parish. The title, in its corrected form, was tendered to the Palmer Corporation, but that company stood upon the contract, as to the 15-day limit, for the curing of defects, and refused to consider the matter further, and hence to accept the title. Plaintiff urges that, in any event, we should require the Palmer Corporation, notwithstanding the delay, to accept the title in its corrected state. He cites, as justifying our doing so, In re Campbell, 119 La. 56, 43 So. 910. In that case, after the title had been rejected, the court granted time in which to make the correction. That case, however, presented facts different from the present one. It involved the purchase of property not subject to great fluctuation in price. This case involves the assignment of an oil lease, having largely a speculative value, and, unlike the case cited, presents a contract, in which the time for curing defects was fixed. Under these circumstances, we think that the case cited is not pertinent, and also that the Palmer Corporation should not be required to waive the delay and forego the rights secured to it under its contract.

Our conclusion is that the defect complained of was sufficiently serious, under the circumstances, to justify the Palmer Corporation in refusing to accept the assignment of the mineral lease, when it pointed out the defect, and that the Palmer Corporation was justified, under its contract, in refusing the title, as corrected and tendered to it, after the limit, fixed by the contract for doing so, had expired.

[9, 10] The trial judge rendered judgment rejecting plaintiff's demands and recognizing the right of the Palmer Corporation to be paid the $8,000 deposited by it. The Palmer Corporation has filed an answer to the appeal herein praying that this judgment be amended so as to require the Olla State Bank to pay it 5 per cent. per annum interest on the $8,000, deposited by it in escrow, from May 28, 1925, as prayed for in the court below. The answer contains an alternative prayer that, if the interest is not allowed as against the bank, then that we require plaintiff to pay it.

In passing upon this request to amend the judgment, it suffices to point out that both the Palmer Corporation and the bank are appellees herein, and that, even if plaintiff were entitled to interest herein, as against the bank, still the judgment cannot be amended in that respect, for the reason that a judgment cannot be changed as between appellees. As relates to requiring plaintiff to pay the interest, it suffices to point out that no such demand, as against him, was made in the trial court, and that a demand for interest cannot be made for the first time on appeal.

For the reasons assigned, the judgment appealed from is affirmed.