(107 So. 506)

No. 26748.

BOYCE COTTONSEED OIL MFG. CO. v. BOARD OF COM'RS OF RED RIVER, ATCHAFALAYA AND BAYOU BOEUF LEVEE DIST. .

(Oct. 6, 1925. On Rehearing, March 1, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Levees and flood control ⬅⬆19.**

Mill and property left outside levee on its construction *held* destroyed for levee purposes within Const. 1921, art. 16, § 6, and Const. 1898, art. 312, and Act No. 79 of 1898.

**2. Levees and flood control ⬅⬆19.**

Under Const. 1921, art. 16, § 6, $500 as assessed value of land thrown into bed of river by construction of levee *held* recoverable from levee district. ·

**3. Levees and flood control ⬅⬆19 — Assessed value of mill destroyed for levee purposes, but which was sold for more than assessed valuation, held not recoverable against district, notwithstanding real value was in excess of assessed value plus sale price (Const. 1921, art. 16, § 6).**

In action against levee district for damage to land and mill thrown into river by construction of levee, assessed valuation of mill, which had been sold by plaintiff for more than that valuation, *held* not recoverable under Const. 1921, art. 16, § 6, notwithstanding real value was in excess of sale price plus assessed value.

**4. Levees and flood control ⬅⬆26—Taxes paid levee district under protest on property embraced in territory added to district before construction of levee throwing land outside of district held not recoverable (Act No. 141 of 1920, amending Act No. 46 of 1892, § 22, and Act No. 79 of 1890).**

Taxes assessed by levee district on property included in· territory added by Act No. 141 of 1920, amending Act No. 46 of 1892, § 22, and Act No. 79 of 1890, creating district, and paid under protest before construction of levee throwing land· outside of district, *held* not recoverable.

**5. Levees and flood control· ⬅⬆19 — Land not covered in times of ordinary high water held not "batture" so as not to· require payment for destruction thereof by levee district (Const. 1921, art. 16, § 6).**

Land not covered in times of ordinary high water, although it had been covered on several occasions in periods of extraordinary high water during last half century, *held* not "batture" so as not to require payment for destruction thereof by levee district under Const. 1921, art. 16, § 6; the "batture" being that part of river bed which is uncovered at time of low water but is covered annually at time of ordinary high water.

[Ed. Note.—For other definitions, see Words and Phrases, Batture.]

**6. Levees and flood control ⬅⬆19—Rural land on river banks is under control of owners, and levee district cannot escape payment for its destruction on ground that control is vested in state (Civ. Code 1870, arts. 455, 863; Const. 1921, art. 16, § 6).**

Under Civ. Code 1870, art. 455, rural land on river banks is under control of owners thereof, and levee district cannot escape liability for its destruction, under Const. 1921, art. 16, § 6, on ground that control of land is in the state or subdivision thereof within Civ. Code 1870, art. 863.

**7. Levees and flood control ⬅⬆19.**

Judgment for damages for destruction of land by construction of levee under Const. 1921, art. 16, § 6, cannot be refused because district may never be able to pay.

**8. Estoppel ⬅⬆78(1)—Owner of land destroyed by construction of levee held not estopped from claiming damage by any agreement with board of commissioners of district as to how to erect levee.**

Board of commissioners of levee district must erect levees when and how public interest demands, and any agreement with landowners as to how levee should be erected is not valid or a proper basis on which to estop landowner from claiming damages for destruction of land.

**9. Navigable waters· ⬅⬆19.**

Structures outside of levees, in bed of stream, are nuisances and may be removed at any time.

O'Niell, C. J., and Thompson and Brunot, JJ., dissenting in part.

On Rehearing.

**10. Levees and flood control ⬅⬆19—Maximum damage recoverable for destruction of property by construction of levee is its assessed value (Const. 1921, art. 16, § 6; Const. 1898, art. 312; Act No. 79 of 1898).**

Maximum damage for land destroyed by construction of levee is assessed valuation under

Const. 1921, art. 16, § 6, as distinguished from the indemnification for compensation provided under Const. 1898, art. 312, and Act No. 79 of 1898.

**11. Levees and flood control ⬤═19.**

State has right of servitude over riparian property which may be used or destroyed in construction of levees, and it need not make compensation therefor.

O'Niell, C. J., and Land and Thompson, JJ., dissenting.

Appeal from Thirteenth Judicial District Court, Parish of Rapides; J. A. Williams, Judge.

Suit by Boyce Cottonseed Oil Manufacturing Company against Board of Commissioners of Red River, Atchafalaya & Bayou Boeuf Levee District. Judgment for plaintiff and defendant appeals. Judgment affirmed as amended.

Thornton, Gist & Richey, of Alexandria, for appellant.

Overton & Hunter, of Alexandria, for appellee.

ST. PAUL, J. In 1921 plaintiff owned 5½ acres of land on the west bank of Red river near the town of Boyce, on which it had a cottonseed oil mill and gin. In that year it returned its property for assessment at a valuation of $500 for the land and $14,500 for the mill; and the assessment was made accordingly.

In the following year the defendant built a levee for the protection of the adjacent lands, and so constructed that levee that the land and improvements of plaintiffs were left between said levee and the river.

Thereafter plaintiff sold its mill for $15,000 to the Mansura Cotton Oil Mill, which removed it and installed it elsewhere at an additional cost of about $20,000.

And thereupon plaintiff brought this suit to recover from defendant the sum of $15,000, under the provisions of Constitution of 1921, art. 16, § 6, p. 115, reading as follows:

"Sec. 6. Lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes shall be paid for at a price not to exceed the assessed value for the preceding year; provided, this shall not apply to batture, nor to property control of which is vested in the state or any subdivision thereof for the purpose of commerce.

"If the district has no other funds or resources out of which such payment can be made, it may levy, on all taxable property situated therein, a tax sufficient to pay for said property so taken, not to exceed one-fourth of one mill on the dollar, to be used solely in the district where collected. This shall not prevent the appropriation of said property before payment."

## I.

[1] Comparing the language of the first paragraph of said section, to wit, "lands and improvements thereon actually *used or destroyed* for levees," with the language of the second paragraph thereof, to wit, "property so *taken*," we readily perceive that lands *used or destroyed* for levees means simply lands *taken* for levees. And since to *take* is to *appropriate*, and vice versa, it follows that land *taken* for levees has precisely the same meaning in the foregoing section as land *appropriated* for levee purposes has in article 312 of the Constitution of 1898.

The General Assembly which met in 1898 immediately after the adjournment of the constitutional convention, many of whose members had also been members of said convention, clearly understood that property *appropriated* for levee purposes included property "damaged or destroyed" for such purposes. See Act 79 of 1898, p. 101.

In La. Society, etc., v. Board of Levee Commissioners, 78 So. 249, 143 La. 90, this court held that land had been *appropriated* for levee purposes which had been thrown out between the levee and the river.

In Ward v. Board of Levee Commissioners, 92 So. 769, 152 La. 158, this court again held that land and improvements thrown outside of a levee, i. e. between the levee and the river, had been *appropriated* for levee

purposes, and that the levee board must pay for said lands and for a mill situated thereon.

In Russell v. Board of Commissioners (La.) 105 So. 361, 159 La. 330, our No. 27040, decided June 22, 1925, we held that land thrown outside a levee was land *destroyed* for levees, within the meaning of Const. of 1921, ut supra, citing inter alia Bickham v. City of Shreveport, 101 So. 8, 9, 156 La. 648, 650.

And our conclusion is that plaintiff's land and mill were actually *destroyed* for levees, within the meaning of Const. 1921, ut supra.

## II.

In 1892 and in 1894 (Acts 41 of 1892, p. 46; and 25 of 1894, p. 28), the General Assembly authorized the Orleans levee board to compensate certain property holders whose property had been appropriated, taken, or damaged, for levee purposes; but with this *proviso*, that in no case should the amount paid to such owners exceed the assessed value of the property at the time. And the Act of 1898 (No. 79, p. 101) contains a similar *proviso*, although the Constitution of 1898 gave a right of action to such property holders for "the value of said property."

Evidently therefore the General Assembly thought that in such cases the assessment would constitute the fair measure of value between the state and the property holder.

And moreover, since the Constitution directed that the property holder should receive "the value" of his property, and presumably the General Assembly meant to obey the Constitution, it follows that the limit fixed was not a mere arbitrary refusal to allow the value of the property, but a legislative declaration that the measure of such value should be the assessment.

And whether or not such acts were or were not wholly constitutional even under that aspect is neither here nor there at present, since the Constitution itself in the very grant of compensation has itself fixed the assessed value as the limit thereof. But manifestly the constitutional convention had in mind the very same idea as had the General Assembly, to wit, that the assessment should be the test of value between the state and the property holder.

For presumably the Constitution meant to deal fairly not only as between the state and the property holder, but also between all property holders. And such would not be the case unless the proviso that compensation should not exceed the assessed valuation were intended as a *measure of values*, and not a mere *limit of compensation*.

For where two persons might be assessed each for half the value of his property, and one were damaged to the extent of only half his property, whilst the other were damaged to full extent thereof, it is clear that if the assessment were a mere limit of compensation, the former would be compensated twice as well as the latter; since he would receive *compensation in full for his loss of half his property* whilst the latter would receive only half compensation for his whole loss. But such would not be the case, and there would be no inequality between them, if the assessment be considered as the mere measure of values. For in that case the one would receive compensation only to the extent of half his assessment, whilst the other would be compensated to the full amount of his assessment; but in both cases the compensation would be in the same proportion, to wit, one-half the loss. And since both parties had it within their power to receive full compensation by returning their property for assessment at its true value, we do not see that either would have any just cause for complaint.

Our conclusion is that the Constitution means that the assessed value of the property taken for levee purposes shall be the *measure of value* of such property, and does not mean merely to fix a limit of compensation.

And the reason why the assessment should be the measure of value in such cases is well stated in Board of Levee Commissioners v. Jackson's Estate, 36 So. 912, 113 La. 124, wherein this court said, on rehearing:

"It is further to be observed that the plaintiff in this case is a levee board acting for the prevention of overflow, the property sought to be expropriated being property which until very recently, and when acquired by the defendants, being subject to a servitude for levee purposes without compensation. It is said that the smallness of the valuation placed upon the property for taxation ought not to enter into consideration as a factor in this case, but we think otherwise in this particular class of cases. The defendants have for a number of years past escaped their proper extent of contribution for tax purposes, and the state has lost to that extent. There may have been no element of moral wrong in this particular case, but certainly when the state herself comes to claim what rightly belongs to her, as she does now in the case at bar, we scarcely think it lies in the mouth of the owners to say that the matter of assessment is not a matter to be taken into view. If the owners for these many years have with propriety paid taxes upon a valuation of $10,000, we are of the opinion that valuation plays a very important part in this matter. *If the valuation stated was the proper standard by which the owners should pay money to the state, it certainly should not be ignored when they call upon the state to pay money for it.*" (Italics ours.)

### III.

[2, 3] As the assessed value of the *land* was $500, and that land has been destroyed for levee purposes, i. e. thrown into the bed of the river, we think plaintiff is entitled to recover of defendant that amount with legal interest from judicial demand.

On the other hand, the mill was clearly worth $35,000, since the purchaser thereof paid plaintiff $15,000 and spent nearly $20,-000 in re-erecting it. But it was assessed only $14,500, and as we have said, *that* is the measure of its value between plaintiff and this defendant. But since plaintiff has received more than that sum from the sale thereof, we are of opinion that it can recover nothing herein on that account. In other words, plaintiff had the right to abandon the mill and claim its assessed value from defendant, or do as it did. But in that case, having received more than its assessed value from other sources, it can recover nothing more from the defendant.

### IV.

[4] Plaintiff also claims the reimbursement of the taxes it paid defendant for the years 1920 and 1921, say $81.19 and $60.25, which it claims to have paid through error and under protest. Its contention is that—

"Plaintiff's property is not in the levee district; it never was in the levee district. It is outside the levee and instead of being benefited, is injured by the levee. Hence plaintiff should not have been required to pay levee taxes; and what it paid, under written protest at the time of payment, should be refunded."

The answer is that by Act 141 of 1920, p. 219, amending section 22 of Act 46 of 1892 and Act 79 of 1890, creating said levee district, there was added to and included in said levee district certain territory which embraced plaintiff's property. And as well as we can make out from this much-confused record, the taxes of 1920 and 1921 were due, and even paid before the levee was built and plaintiff's land thrown outside of it.

### V.

[5] Defendant contends that plaintiff's land was "batture," and hence need not be paid for under the constitutional provision above quoted. But plaintiff's land was *not* batture. The batture is that part of the river bed which is uncovered at the time of low water, but is covered annually at the time of *ordinary* high water; when it ceases to be covered at the time of ordinary high water, it ceases to be *batture* and becomes *bank* of the river. R. C. C. 457; *Ward v. Board of Levee Commissioners*, 92 So. 769, 772, 152 La. 158, 166.

Plaintiff's land was *not* covered in times of *ordinary* high water, although it had been

covered by water on several occasions in periods of extraordinary high water during the last half century.

## VI.

[6] Defendant further contends that plaintiff's land is property, "the control of which is vested in the state or any subdivision thereof for the purpose of commerce," and hence again need not be paid for under the constitutional provision above quoted.

That provision has reference to·article 863 of the Revised Civil Code of 1870, which is the same as article 859 of the Code of 1825, and reads as follows:

"Art. 863 (859). The corporations of cities, towns and other places may construct on the public places, in the beds of rivers and on their banks, all buildings and other works which may be necessary for public utility, for the mooring of vessels and the discharge of their cargoes, within the extent of their respective limits."

That article, by its very terms, applies only to incorporated cities and towns, and·has no application whatever to rural property.

The article of the Code applicable to rural property is as follows:

"Art. 455 (446). The use of the banks of navigable rivers or streams is public; accordingly every one has a right freely to bring his vessels to land there, to make fast the same to the trees which are there planted, to unload his vessels, to deposit his goods, to dry his nets, and the like. Nevertheless the ownership of the river banks belongs to those who possess the adjacent lands."

From the foregoing it is clear that in the one case the *control* of so much of the banks of rivers as is necessary for the commerce of a municipality is vested in the authorities thereof, whilst in the other control of such banks is vested in the owner thereof, subject, however, to the provision that he shall not interfere with the servitude which the public has in the *use* thereof as above stated.

And the reason why the Constitution allowed no compensation for such part of the river bank as was under the control of municipal authorities is that it recognized that such property was for all practical purposes already forever lost to the owner thereof; for municipalities on the banks of navigable streams continue forever, and in the whole history of this state as written in the jurisprudence thereof from Mayor v. Magnon, 4 Mart. (O. S.) 2, to Construction Co. v. Railroad, 21 So. 891, 49 La. Ann. 528, there is not a single instance ·in which the *owner* of riparian rights within a municipality has ever been able to wrest from public control a single foot of river bank once fallen into the grasp of the municipality; and Act 42 of 1855, p. 37, now section 318 of the Revised Statutes of 1870, has ever been an idle piece of legislation, since:

"The discretion of the city in determining what are proper and needed facilities for commerce, and on what part of the river bank within her limits they should be established, is not a proper question for judicial control or interference." Watson v. Turnbull, 34 La. Ann. 856.

But in the case before us the land is not within the limits of any municipality, and has never been under the control of any municipal authority. It is land which is *rural* and has always been under the control of the owners thereof; and hence must be paid for under the constitutional provision hereinabove cited.

## VII.

[7] Defendant further contends that it will never be able to pay for the property, which it will be obliged to take for levee purposes, out of the taxes which it is authorized to collect for that purpose. With that we have nothing to do; the Constitution provides that the land so taken shall be paid for, and perforce we must so hold. And if the Constitution, whilst so declaring, has yet failed to provide adequate means for making such payment, then there arises a condition in which defendant will have to do the best it can and let it go at that. But this court can-

not refuse plaintiff a judgment to which it is clearly entitled, merely because of the possibility that plaintiff may not be able to collect its judgment.

### VIII.

[8, 9] Defendant further contends that plaintiff is estopped from claiming compensation because certain officers of plaintiff corporation agreed with defendant that if the levee was built in a certain manner slightly different from that proposed, plaintiff would be "satisfied."

Pretermitting the question whether such officers had authority to bind plaintiff, the fact yet remains that defendant had no authority to enter into any binding agreement with any one as to how or when it should erect a levee. Its plain duty was and is to erect such levees when and how the public interest demanded, and accordingly any agreement on its part meant nothing. Moreover, this court has repeatedly held that structures standing outside of levees, that is, in the bed of a stream, were nuisances and might be removed at any time. See various authorities cited in Construction Co. v. Railroad Co., 21 So. 891, 49 La. Ann. 527; particularly, Mayor v. Magnon, 4 Mart. (O. S.) 2; Natchitoches v. Coe, 3 Mart. (N. S.) 140; Shepherd v. Third Municipality, 6 Rob. 349, 41 Am. Dec. 269.

Moreover, our appreciation of the *agreement* between the parties is that it was merely an honest endeavor on the part of all to make the most out of a bad situation, and bound no one to anything.

### Decree.

The judgment appealed from is therefore amended by reducing the amount allowed plaintiff to $500, with legal interest from judicial demand; and as thus amended said judgment is affirmed, defendant to pay all costs of the court below and plaintiff to pay the costs of this appeal.

160 LA.—24

LAND and ROGERS, JJ., concur in the opinion and decree.

O'NIELL, C. J., and THOMPSON, J., concur in so much of the decree as allows plaintiff the assessed value of the land, but dissent from so much thereof as rejects plaintiff's claim for the assessed value of the improvements.

BRUNOT, J., concurs in so much of the decree as rejects plaintiff's claim for the assessed value of the improvements, but dissents from so much thereof as allows plaintiff the assessed value of the land.

OVERTON, J., recused.

### On Rehearing.

(NOTE.—In this case, Mr. Justice OVERTON being recused, and the other six Justices of the Supreme Court being equally divided, Hon. JULIAN MOUTON, Senior Judge of the Circuit Court of Appeal, First Circuit, was called to sit in this case, and handed down the opinion and decree of the court herein as follows:)

MOUTON, J. [10] In the original opinion handed down in this case, it was held by Mr. Justice ST. PAUL, organ of the court, that the Constitution means that the assessed value of property taken for levee purposes should be the measure of value of such property, and does not mean merely to fix a limit of compensation.

Under article 312 of the Constitution of 1898, a right of action was given a riparian owner for the value of the property which might be taken for levee purposes. By Act 79 of 1898, the board of the Orleans levee district was authorized to levy a tax for the purpose of indemnifying the owners whose property might be damaged or destroyed in the construction of levees. The word to "indemnify" used in this statute means, as I understand it, to compensate for injury sustained. It was further provided for in that act that the compensation in no case should

exceed the assessed value of the property on the assessment roll of 1897, which was for the year next preceding the adoption of that statute. It is extremely doubtful that the Legislature had the constitutional authority to thus base the right of recovery on the assessed value not to exceed the limit fixed in the act, but, however this may be, its enactment shows that the policy of the state at that time, as expressed through its legislative department, was to allow to the riparian owner the assessed value of his property in "indemnification" or "compensation" for his loss. In dealing with this subject the framers of the Constitution of 1921 did not use the language found in Act 79 of 1898. Article 16, § 6, Constitution 1921, reads in part as follows:

"Lands and improvements thereon hereafter actually used or destroyed for * * * levee * * * purposes * * * shall be paid for at a price not to exceed the assessed value for the preceding year."

In the second paragraph of that article, it is said in case the funds of the board are insufficient to meet such payments, it may levy a tax sufficient to pay "for said property so taken." This language refers to the lands and improvements used or destroyed for levee purposes. Instead of employing the words "indemnification" or "compensation" found in the statutes which had preceded the Constitution of 1921, the word "price" was used in article 16, § 6, as meaning the "value" or "equivalent" for riparian property which might be used or destroyed in the construction of levees.

[11] I believe the word "price" was used in the sense above stated because the state had a right of servitude over property of that character which it could have exercised, including the destruction of the improvements, without making any compensation therefor. Bass v. State, 34 La. Ann. 494; Hanson v. City Council, 18 La. 295; Zenor v. Parish of Concordia, 7 La. Ann. 150. The amount to be thus awarded to the owners of land adjacent to navigable rivers by the framers of the Constitution of 1921 was therefore purely gratuitous.

As the state had the right to take such property without compensation, the amount provided for under article 16, § 6, of the Constitution of 1921 was not at all based on considerations involving the real or actual value of the property, which seems to have been contemplated by article 312, Constitution 1898, but was merely a constitutional provision conceived in a spirit of liberality towards the owner, but which amount was to be gauged by the assessed valuation of the property taken, and with the restriction that it would in no case exceed the maximum limit of the assessment. The value was therefore fixed within this constitutional limitation as an "estimation," "award," or "compensation" to the owner.

The proof shows that the mill of plaintiff company was moved elsewhere and was sold for $15,000. Plaintiff got this amount, but claims it is also entitled in addition thereto to recover from the defendant board the sum of $15,000, the assessed valuation of its property. This claim is evidently based on the contention that it should have this amount because its property taken for levee purposes had an actual value of some $50,000. If it had received $35,000 instead of $15,000, it would evidently be making a claim of $15,000 because the property taken from it was assessed to that amount which, added to the supposed $35,000, would compensate it for its total loss. Carried to its final analysis, the contention of the plaintiff is therefore grounded on the theory that it has the right to obtain the actual or real value of the property, and that it should not be limited to its assessed valuation. Such a contention might have been effective under article 312, Constitution 1898, where the value of the property was made the criterion of recovery, which subsequent legislation attempted to correct,

and which was finally rectified by article 16, § 6, Constitution 1921. Under the present Constitution, the true test is the assessed and not the real value of the property. Counsel for plaintiff also argues that if the assessed valuation be adopted as the measure of value, the riparian owner could obtain payment upon an inflated assessed valuation of his property. I do not think the state could be placed in such a predicament, as it is bound under the provision of the Constitution under discussion not to pay any amount in excess of the assessment, but it is nowhere precluded from protecting itself against payment upon an extravagant, or speculative assessed valuation.

I believe the assessment is intended to be a measure of values between the state and the property holder, and not a limit of compensation. Am therefore of the opinion that the original opinion rendered herein has correctly stated the law governing this case.

It is therefore ordered, adjudged, and decreed that the original opinion and judgment be reinstated, and made the final judgment of the court.

O'NIELL, C. J., and LAND and THOMPSON, JJ., dissent.

OVERTON, J., recused.

O'NIELL, C. J. (dissenting). The majority opinion in this case is founded upon the false premise—very plainly stated in the opinion on rehearing—that the assessed value for the preceding year, of lands and improvements used or destroyed for levee purposes, is the exact measure of compensation, and not the limit of compensation, to be paid to the owner, under section 6 of article 16 of the Constitution. Section 6 declares, as plainly as language can express anything, that lands and improvements thereon used or destroyed for levee purposes "shall be paid for at a price not to exceed the assessed value for the preceding year." If the actual value of the land and improvements so taken or destroyed exceeds the assessed value, the amount of compensation is the assessed value; and if the assessed value exceeds the actual value, the amount of compensation is the actual value. The language of the Constitution leaves nothing for interpretation in that respect.

The issue in this case is very simple. The levee board destroyed the plaintiff's property, assessed for $15,000, and actually valued at $50,000 to $75,000. Plaintiff salvaged from the buildings and machinery $15,000, and therefore suffered a net loss of at least $35,000. Against that loss, the Constitution allows compensation, "not to exceed the assessed value," which in this instance is only $15,000. The plaintiff is entitled to that much compensation. The majority opinion in this case is that the salvage should be deducted from the assessed value, leaving no compensation whatever, instead of being deducted from plaintiff's net loss. Accordingly, if the salvage had amounted to $20,000, the plaintiff would have to pay the levee board $5,000, even though plaintiff's net loss would be $50,000.

It is suggested in the majority opinion that, if our minority opinion is correct, and if the salvage in this case amounted to $35,000, leaving a net loss of only $15,000, the plaintiff should be compensated in full for his loss. That is correct. The Constitution provides that the property owner shall be compensated in full for his loss, provided it does not exceed the assessed value for the preceding year.

My opinion is that the plaintiff, having suffered a net loss exceeding in amount the assessed value of the property destroyed, is entitled to be compensated to the extent of the assessed value.