HAMITER, Justice.
 

 For more than 1Ó0 years prior to September, 1940, the Westwego Canal & Terminal Company, Inc., or its authors in title, possessed as owner certain property in Jefferson Parish consisting of a canal, boat locks ard land, particularly located at a point on the right bank of the Mississippi River across and a short distance from the City of New Orleans.
 

 When its possession of the property was disturbed during or about the named month by the Lafourche Basin Levee District, the disturbance resulting from the building of a levee that traversed and completely destroyed the locks, the Canal Company brought this action praying “that judgment be rendered in its favor and against the said Lafourche Basin Levee District, decreeing that its ownership and possession of the said property has been disturbed by the Lafourche Basin Levee District within the year preceding the filing of this suit, and restoring said property to petitioner’s possession unless and until the Lafourche Basin Levee District shall have paid petitioner the assessed value of its property for the year 1939, and not less than $36,-' 230.”
 

 The defendant first tendered an exception to the jurisdiction ratione personas, showing thereunder that its legal domicile is in the Parish of Ascension and insisting that the suit should be tried and heard there, not in the Parish of Jefferson where the property is situated. The exception, in due course, was overruled, and on ex-ceptor’s application to this court for writs of certiorari and prohibition we held that the ruling was correct. No. 36,113 on the docket of this court.
 

 Answer was then filed in which the several defenses hereinafter discussed were urged.
 

 There was judgment, after trial of the merits, in favor of the Canal Company and against the Levee District for the sum of $15,000, with legal interest from judicial demand until paid and all costs of suit.
 

 Both parties are appealing, the Canal Company, of course, complaining here only of the asserted inadequateness of the award to it.
 

 Defendant is again urging its exception to the jurisdiction ratione personae. This is the same exception that we previously passed upon in the above mentioned cause No. 36,113, there holding that the district court’s overruling of it' was correct; hence, sufficient now is the comment that the suit partakes of the nature of an action in revendication of real property which may be instituted in the court of the
 
 *275
 
 situs of the property. Code of Practice, Article 163.
 

 In connection with one of the defenses made on the merits, counsel for the Levee District directs attention to that portion of Article 16, Section 6, of the Louisiana Constitution of 1921, as amended by Act 165 of 1928 (adopted November 6, 1928), which recites: “Lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes * * * shall be paid for at a price not to exceed the assessed value for the preceding year; provided, that this shall not apply to batture, nor to property the control of which is vested in the state or any subdivision thereof for the purpose of commerce * * *.” Then they contend that “the plaintiff has failed to prove its right of recovery because the property was hot assessed for the purposes of taxation within the meaning of the law. * * * That since title to the property was in the State of Louisiana, it was not assessed for the purposes of taxation in the name of the plaintiff, and there can, therefore, be no recovery by it in this suit.” Further they state: “In the case at bar, as the unqualified owner of the property in question, the State of Louisiana had absolute and complete control of the property until such time as the former owner took advantage of the right of redemption granted him by statute. However, during that 'time, the State could dispose .of the property and if the property was appropriated by the Levee Board (even though it belonged
 
 to the
 
 State, which it had a right to do) it acquired that servitude from the State as the owner.”
 

 • The facts giving rise to this contention are the following: At a tax sale held on November 13, 1937, the property in question, while belonging and assessed to the Canal Company, was sold for the unpaid taxes of 1936 to Mrs, Vic A. Pitre. Thereafter, in a suit brought by the tax debtor, the adjudication was annulled by the district court, under a judgment of date April 12, 1938, for the reason that the ■ required notice of delinquency had not been given. On a devolutive appeal from that judgment taken by the purchaser, this court approved the ruling. Westwego Canal & Terminal Company, Inc., v. Pitre et al., 1940, 195 La. 107, 196 So. 36. In 1938, during the pend-ency of that litigation, the property was assessed to Mrs. Pitre, and on October 25, 1939, under her assessment, it was adjudicated to the State of Louisiana for the unpaid 1938 taxes. For the years 1939 and 1940, however, the assessments were again carried in the name of the Canal Company, this, obviously, because the assessor took notice of the then executory, and previously rendered, judgment that declared the tax sale to' Mrs. Pitre illegal, null and void. The appropriation of the property for levee purposes occurred in 1940. On July 11, 1941, after the commencement of this action, plaintiff redeemed the property from the State of Louisiana by paying all taxes due and owing at that time. Thus, the appropriation occurred after the adjudication to the State and before consummation of the redemption. The redemption, however,
 
 *277
 
 was perfected within three years, but following the lapse of one year, after the adjudication.
 

 It would seem that the property’s adjudication to the State while assessed to Mrs. Pitre was an absolute nullity, in view of the fact that the previous tax sale to her has been held to be illegal, null and void. But for the purpose of this discussion, and for that only, we shall assume that it was valid.
 

 The Louisiana Constitution of 1921, in Article 10, Section 11, with reference to property sold for taxes, said that: “The sale shall be without appraisement and the property sold shall be redeemable at any time during one year from date of recordation of the tax sale * * Such redemptive period of -one year, however, was later changed and extended to a period of three years. Act 147 of 1932, adopted November 8, 1932.
 

 There is no other provision of our law presently in force and effect, of which we have knowledge, that fixes a specific period for the redemption of property adjudicated for non-payment of taxes. Formerly, under Section 62 of Act 170 of 1898, with reference to acquisitions by the State, there was a period of twelve months provided. But that provision was later amended, and now under Act 175 of 1934 the right of redemption continues as long as the title remains in the State.
 

 If, then, an adjudication to an individual purchaser at the tax sale vests no clear title until the expiration of three years (formerly one ’ year), certainly the State, where the property is transferred to it in the absence of a bidder, can not become the absolute owner before the elapse of that three year period. To say that the State acquires the property absolutely and can convey a good and valid title immediately after its acquisition, thereby depriving the tax debtor of any possibility of redemption, would defeat the very purpose of our redemptive laws and also place a purchaser from the State in a preferred position to one buying at the tax sale. If that were the law no one would buy at tax sale; instead one wishing to acquire property for delinquent taxes would merely wait until it is adjudicated to the State and then buy, getting a clear title immediately.
 

 The cases of Police Jury of the Parish: of Jefferson Davis v. Grace, 182 La. 64, 161 So. 22, and Lovell v. Dulac Cypress Co., 5 Cir., 117 F.2d 1, which are cited and! relied on by the Levee District, provide no* contradiction to the view just stated. The former is not authority for the proposition, as contended by defendant, that the State possesses the unlimited right “to* make whatever disposition it desires with property adjudicated to it'for non-payment of taxes.” A question of -that kind was not presented or considered therein. The case merely held that under our statutory law the right of redemption from the State will continue as long as title to the property remains in it.
 

 The Lovell case is clearly inapplicable. Its holding was that after the primary period of redemption had passed, the State was the absolute owner of the property. There the State’s conveyance occurred aft
 
 *279
 
 er the elapse of three years, from the date of its acquisition of the property.
 

 In the instant case both the appropriation by the Levee District and plaintiff’s redemption of its property occurred within three years after the adjudication to the State for delinquent taxes. During that period of time plaintiff lost none of its rights, since the State was holding merely an inchoate title. Therefore, it must be concluded that the property was properly assessed to plaintiff in 1939, as well as in 1940 when appropriated for the purposes of taxation.
 

 Exceptions of no right and no cause of action, filed by defendant at the conclusion of the trial, raise the identical legal question just discussed. They were correctly overruled.
 

 Another defense offered, to again quote from the brief of defendant’s counsel, is that “The plaintiff cannot recover since the construction of the levee was made necessary because of the defective condition of the plaintiff’s locks, made so by their own wanton and negligent omission to properly repair them”; and that “if the board was liable at all, the debt was fully compensated for and set off by the legal obligation of the plaintiff to reimburse the defendant for the damages it has suffered.” In this we also find no merit.
 

 It is true, as counsel point out and as certain engineers from the United States Army Engineers’ Office testified, that in 1940 the locks were in a bad state of repair. For several years previously they had been deteriorating rapidly because of non-use and of plaintiff’s neglect respecting their upkeep. And this deterioration, unquestionably, resulted in the leakage in several places found by the engineers on their inspection, which leakage defendant claims made necessary the levee’s construction. But that inspection, it will be noticed, took place on May 8, 1940, after the Levee District had already adopted a formal resolution (April 11, 1940) providing for the appropriation of all lands (that of plaintiff as well as of others) necessary for the building of the new levee, thus indicating that the complained of defectiveness was not responsible for the work. Furthermore, it has not been shown that the locks were beyond repair. If they were unsafe as defendant contends but could have been repaired, the Levee District’s recourse, it seems to us, was to call upon the United States government, which has charge of flood control, to compel plaintiff to place the locks in good condition.
 

 The real cause for the levee’s construction, as we appreciate the evidence, was the erosion and caving that the Misissippi River’s right bank was and had been experiencing for a considerable distance in both directions from plaintiff’s property; it was not the asserted defectiveness of the locks. This conclusion is fortified by the fact, shown by the Levee District’s appropriation resolution of April 11, 1940, that property of many other owners in that vicinity was likewise taken for levee purposes.
 

 Next, defense counsel argue that the lock structures were built without the permission of the federal authorities as re
 
 *281
 
 quired under laws existing at the time of their building (1904 and 1917), and, for that reason, they were illegal; and further, that plaintiff for a long time has been operating on a toll basis without any franchise from the State of Louisiana. We are not impressed with this argument. The questions thus raised concern only the United States government and the State of Louisiana, not this defendant.
 

 It follows from what we have said above that the Canal Company is entitled to be compensated for its improvements and land that were used or destroyed by the Levee District. But a determining of the amount of the recovery to be permitted, based on the evidence adduced at the trial and now before us, is a problem that is not easily solved: •
 

 As -stated in the Constitution (Article 16, Section 6, quoted supra), the property taken shall be paid for
 
 at a price not to exceed the assessed value for the preceding year.
 
 This simply means that in no case shall the compensation be more than the assessed value; however, if the actual value is less than the assessed value-such actual value shall be paid. Of course, we are cognizant of certain language used in the majority opinions (on the original hearing and on rehearing) in Boyce Cotton Seed Oil Manufacturing Co. v. Board of Commissioners, etc., 160 La. 727, 107 So. 506, and referred to in subsequent cases, to the effect that the Constitution means that the assessment shall be the measure of value of the property and not a limit of the compensation to be paid. Seemingly, that language conflicts with the interpretation given above. It is important to notice, however, that in the Boyce Cotton Seed Oil Manufacturing Company case the actual value of the property exceeded the assessed valuation, and it was unnecessary there to construe the constitutional provision with reference to a situation where the actual value' is less than the assessed value, such as the instant case may present.
 

 Our present interpretation finds support in the brief of plaintiff’s counsel, for therein it is said that:
 

 “On this branch of the case it is simply a question as to whether the locks were assessed for 1939 and if that assessment did not exceed their value. If the assessment was fair, as shown by the record, did not exceed the value of the locks, then the Constitution says that the assessed value must be paid.”
 

 The district court, as before shown, condemned defendant to pay to plaintiff the-sum of $15,000; but we are at a loss to say how that figure was determined.' No written reasons were assigned; ^no evidence indicates that specific amount- to be appropriate. Plaintiff is now complaining' that it is inadequate, defendant that it is excessive.
 

 The only proof in the record as to the actual value of- the property when- taken is a document termed “statement of sound value”, compiled by the president of plaintiff company, before the construction of the levee, for use in negotiating a settlement of the claim. It values the land at $9600 and the improvements at $49,503.90.
 
 *283
 
 It may be competent evidence; but the purpose of its preparation, we are inclined to think, serves to detract from its weight. Also there are before us certain estimates, furnished by two construction companies, of the cost of reconstructing (new construction) the locks, each of these showing an amount in excess of $100,000. Unquestionably, these are incompetent as proof of the actual value of the particular improvements destroyed.
 

 The asséssed value for the year 1939, which is the maximum that can be paid, was $30,230 for the locks and $370 for the land. But the evidence seems to indicate that this assessment exceeded the actual value. (This, obviously, was likewise the view taken by the trial judge, for he permitted recovery of only $15,000.)
 

 For many years the property has enjoyed the same assessed valuation; however, during or about 1935 the locks, which previously operated on a toll basis, were closed, this because of the completion and operation of the free Harvey locks located nearby, and they have not been used since. As a result of the long period of non-use the improvements deteriorated rapidly and to a great degree. In 1940 they were in a ^general run down condition, a bad state of repair. The lock chamber was then filled almost entirely with river deposit, brush, and willow trees, and much of the operating equipment, on account of rust or breakage, was in need of repair or replacement.
 

 As to plaintiff’s land, there was only a small portion of it taken, a parcel having the dimension of 100 feet by 150 feet. Its actual value is not definitely shown.
 

 Since both litigants are .complaining of the award made by the district court and we are unable to determine from the record, with any degree of certainty, the proper amount for which recovery should be permitted, it becomes necessary that the case be remanded for the introduction of further evidence relative to the actual value of the property when taken.
 

 For the reasons assigned the judgment appealed from is reversed and set aside, and it is now ordered that the case be remanded to the district court for the restricted purpose of hearing and receiving additional evidence respecting the actual value, as of the date when taken, of the portion of plaintiff’s property that was used or destroyed for levee purposes; further, at the conclusion of the hearing, the district court shall render judgment, consistent with the views herein expressed and on the evidence heretofore and to be adduced, in favor of plaintiff. Defendant shall pay all costs of both courts.
 

 PONDER, J., takes no part.