535 So.2d 1240 (1988)
BOARD OF COMMISSIONERS OF the ATCHAFALAYA BASIN LEVEE DISTRICT, Plaintiffs-Appellees,
v.
Adam PERCLE, Defendant-Appellant.
No. 87-1000.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1988.
Writ Denied February 17, 1989.
*1242 Joseph W. Cole, Jr., Baton Rouge, plaintiff-appellee.
Joseph M. Thibaut, Asst. Dist. Atty., New Roads, defendant-appellee.
Leonard & Hayes, Edward M. Leonard, Jr., Morgan City, defendant-appellant.
Before DOMENGEAUX, DOUCET and YELVERTON, JJ.
DOUCET, Judge.
The above numbered and entitled appeal was consolidated with an appeal entitled Eugene Garber, et al, v. Ray's Construction Company, Inc., et al, 535 So.2d 1248 (La.App. 3rd Cir.1988). Both appeals arise out of a common set of facts. We decide all issues presented in both appeals in this opinion but render a separate decree in the companion case.

FACTS
On September 4, 1940, the Board of Commissioners of the Atchafalaya Basin Levee District (hereinafter the Levee Board) adopted a resolution appropriating, for the purpose of construction of the East Atchafalaya Basin Protection Levee, certain servitudes or rights of way located on property riparian to Bayou Long and between Bayou Long and the proposed East Atchafalaya Basin Protection Levee. This appropriation was accomplished under the authority of the Louisiana Constitution of 1921 and the laws of Louisiana establishing the Levee District. Included in this appropriation was a 21.2 acre tract of land which was owned at the time by Charles F. Garber, as is shown by the tax assessment of St. Martin Parish for the year 1939 which is in evidence in this case. The tax assessment also shows that the assessed value of the tract was $360.00 in 1939. The tract is now owned by the heirs of Charles F. Garber (hereinafter the Garbers), and is the subject matter of this appeal.
At the time the tract was appropriated, Mr. Garber was notified of the appropriation, furnished with maps, and offered the sum of $522.56 as compensation for the acquisition of the servitude or right of way. Filed into the record is a Levee Board voucher for that amount of money, together with a receipt dated May 13, 1941, and signed by Charles F. Garber. This receipt states: "Right of Way:Land used and timber destroyed...." It also states: "21.2 acres land & timber" and acknowledges the receipt of "the sum of Five Hundred Twenty Two and 56/100 Dollars, in full payment of the above account."
In late 1940 and early 1941, a borrow pit was dug on a portion of the subject tract and the borrow material was used in the construction of the East Atchafalaya Basin Protection Levee.
As a result of severe flooding in 1973, the United States Army Corps of Engineers (hereinafter the Corps) determined that it was necessary to raise and strengthen the Protection Levee. Accordingly, the Corps requested from the Levee Board a right of entry into the subject tract. With the consent of the Office of Public Works, the Levee Board granted the right of entry.
The Garbers were notified of this request in late 1973, and received a formal communication by registered letter, together with a map and copies of the resolution granting the right of entry.
*1243 The Corps contracted with Ray's Construction Company for work on the subject tract. The contract called for the construction company to clear timber, dig borrow pits, and to stockpile the borrow material so that it could dry out for later use on the Protection Levee. Work was begun on the property by Ray's Construction Company on or about November 1, 1977.
Adam Percle, a tenant of the Garbers who lived on the property, received a letter from the Levee Board on or about April 20, 1977, advising him that he was within the levee right of way and was subject to being moved at his own expense. On October 17, 1977, Mr. Percle received a certified letter from the District Attorney's Office advising him that he would have to remove his improvements. Mr. Percle failed to remove these improvements.
On November 22, 1977, the Levee Board filed suit for the eviction of Mr. Percle. The Garbers intervened in this suit asserting that the servitude or right of way, appropriated by resolution of the Levee Board in 1940 and paid for in 1941, no longer affected the subject property. Alternatively, they asserted that if the right of way still affected the property, the resolution of appropriation was unconstitutional because it violated their rights under the Fourteenth Amendment of the United States Constitution.
On December 2, 1977, the Garbers filed suit against Ray's Construction Company and the Levee Board asserting that the named defendants were trespassing on the property and had damaged the property, and prayed for an injunction restraining defendants from entering the property and for damages caused by the work already done.
These two suits were consolidated for trial and heard on December 22, 1977. Judgment was rendered in favor of the Levee Board in both matters. The trial court found that the Garber property is riparian and thus subject to the Art. 665 servitude and further stated in its reasons for judgment:
"Accordingly this Court finds that the Board has a servitude in the nature of LSA-C.C. Art. 665 and has not acted arbitrarily or capriciously in their exercise of that right. When a levee district appropriates property for levee purposes pursuant to Article 665, there is no requirement that the landowner be justly compensated. Louisiana Constitution of 1974, Article 1, Section 4. The maximum amount a landowner can receive for property appropriated is the assessed value of the property for the preceding year. Constitution Ancillaries, Article 16, Section 6. Stevenson v. Board of Levee Commissioners, No. 6215, [353 So. 2d 459] [(1977)] Third Circuit Court of Appeals; Jeanerette Lumber and Shingle Co. v. Board of Commissioners for Atchafalaya Basin Levee District, 181 So.2d 415, 3rd Cir., 1965.
"Finally, the Court concerns itself with the issue of whether or not Adam Percle, a tenant of the Garber family on the land at issue, can be evicted by the Board. It was established by the trial evidence that the Percle trailer lies within the levee servitude. Garber as a lessor can not lease a greater right than he himself has. The power of the Board to appropriate includes the power to evict. The servitude at issue is one imposed by law. One claiming a servitude may assert this right against a lessee. LSA-C.C. Art. 2704.
"Accordingly this Court finds that the Board's servitude is sufficient to evict Mr. Percle."
Thereafter, a new trial was granted pursuant to a timely application by the Garbers and a second trial was conducted on October 22, 1985. After this trial, the court ruled that the Levee Board had a servitude over the property in question and that Act 314 of 1978 did not apply to the property because "The property was neither taken, damaged or destroyed before the effective date of Act 314. Additionally, the instant suit is not a suit for appropriation or expropriation." From this adverse ruling, the Garbers now appeal.
LAW OF SERVITUDES FOR LEVEE PURPOSES
Article 665 of the Louisiana Civil Code provides as follows:

*1244 "Art. 665. Legal public servitudes
Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works.
All that relates to this kind of servitude is determined by laws or particular regulations."
It creates a servitude in favor of the public over riparian property for levee purposes. The State through its levee boards may appropriate for levee purposes riparian lands burdened with this servitude.
According to the jurisprudence, three criteria must be met for property to be subject to the servitude and, thus, to appropriation. First, the land must be riparian when separated from the public domain. Second, the levee must be necessary for the control of floodwaters from the navigable stream to which the land is riparian. Third, the property must be within the range of reasonable necessities of the situation, as produced by the forces of nature unaided by artificial causes. Stevenson v. Board of Commissioners of the Tensas Basin Levee District, 353 So.2d 459 (La.App. 3rd Cir.1978), writ denied, 355 So. 2d 266 (La.1978); Delaune v. Board of Commissioners for the Pontchartrain Levee District, 230 La. 117, 87 So.2d 749 (1956).
Prior to 1921, such property could be appropriated for levee purposes without payment to the landowner because it was held that such servitudes were reserved to the public from the time the property was severed from the public domain, and that such property was held privately subject to the servitude. Deltic Farm & Timber Co. v. Board of Com'rs for the Fifth Louisiana Levee District, 368 So.2d 1109 (La. App. 2nd Cir.1979), writ denied 371 So.2d 833 (La.1979) Eldridge v. Trezevant, 160 U.S. 452, 16 S.Ct. 345, 40 L.Ed. 490 (U.S. Sup.Ct.1896).
Article 6, Section 16 of the Louisiana Constitution of 1921 authorized payment to property owners whose land had been appropriated for levee purposes. The payment authorized was the assessed value of the land appropriated for the year preceding the year of appropriation. The Supreme Court held that, since the State already had the right of appropriation under Article 665, this payment was merely a gratuity. Boyce Cottonseed Oil Manufacturing Company v. Board of Com'rs of Red River, Atchafalaya, and Bayou Boeuf Levee District, 160 La. 727, 107 So. 506 (1925).
Article VI, Section 42 of the Louisiana Constitution of 1974 provides:
"Notwithstanding any contrary provision of this Constitution, lands and improvements thereon hereafter actually used or destroyed for levee or levee drainage purposes shall be paid for as provided by law."
This section authorized the Legislature to provide a method of payment for property used or destroyed for levee purposes. The previous limitation on compensation (the assessed value for the preceding year) was contained in effect as a statute by La. Const. Art. XIV, § 16 (1975), subject to change by law.
The Legislature enacted Act 314 of 1978 in accordance with the authorization contained in Art. VI, § 42 to change the measure of payment for property taken or destroyed for levee purposes. Act 314 provided:
"A. The levee boards of this state, Orleans Parish excepted, may construct and maintain levees, levee drainage, and do all other things incidental thereto. The levee boards may do all drainage work incidental to or made necessary by the construction of the levee system in this or adjoining states.
"B. All lands and improvements, Orleans Parish excepted, hereafter actually used, damaged or destroyed for levees or levee drainage purposes shall be paid for at fair market value to the full extent of the loss, and just compensation for both the land and improvements taken or destroyed and for damages suffered by reason thereof, shall be paid to the owner or into the court for his benefit.

*1245 "The measure of compensation for lands and improvements taken or destroyed for levee and levee drainage purposes shall be the fair market value of the property taken or destroyed before the proposed taking of the property or construction of the levee or the levee drainage facilities without considering any change in value caused by the construction of the levee or the levee drainage facilities. The measure of damages, if any, to the remaining property of the owner by reason of the taking or destruction of a portion of his property is determined on a basis of immediately before and immediately after the taking, destruction, or the construction of the levee or the levee drainage facilities, taking into consideration the effects of the completion of the project in the manner proposed or planned.
"The owner shall be compensated as provided in this Act only when and to the extent that the Legislature, the levee board or the Federal Government appropriates the funds therefor.
"The compensation defined herein shall apply to all lands and improvements taken, damaged or destroyed for levee and levee drainage purposes after the effective date of this Act, and to the determination of just compensation in any expropriation or appropriation suit pending on July 10, 1978, involving lands and improvements taken, damaged or destroyed for levee and levee drainage purposes."
Thus, the Act mandated payment at fair market value for property taken, damaged or destroyed for levee purposes after the effective date of the Act. More important to this case, the Act also stated that the compensation defined shall apply to the determination of just compensation in any expropriation or appropriation suit pending on July 10, 1978, involving property taken, damaged or destroyed for levee purposes.

THE GARBER PROPERTY IS SUBJECT TO THE ART. 655 SERVITUDE
The testimony at trial showed that the land at issue is riparian to Bayou Long and was at the time R. Pepper was granted a patent by the United States. Testimony also showed that Bayou Long was a navigable stream at that time and still is today.
The record also shows that the East Atchafalaya Basin Protection Levee was constructed to control floodwaters of the AtchafalayaRed River system and that Bayou Long was one of the principal distributaries of the Atchafalaya River System. Wallace J. Hargrave, the Chief Engineer for the Levee Board, testified that if the levee wasn't there, Bayou Long would overflow onto the Garber property. Warren Beadle, an expert in civil engineering and surveying, testified that without the levee the Garber property would be under 2.5 to 3 feet of water for from one to three or four months a year. Herbert Juneau, Area Engineer for the Corps, testified that the Garber property would flood yearly if there were no levees. Thus, the record shows that the levee was necessary for the control of floodwaters from Bayou Long, the stream to which the property is riparian.
Finally, since the levee was necessary to control the floodwaters of Bayou Long, the trial court found "that the property appropriated is within the reasonable necessities of the situation, as produced by the forces of nature."
Therefore, we find that the trial court was correct in its finding that the property at issue is subject to an Art. 655 servitude in favor of the Levee Board.

ACT 314 DOES NOT APPLY TO THE GARBER PROPERTY
The trial court held that Act 314 of 1978 did not apply (1) because the property involved was neither taken, damaged or destroyed before the effective date of Act 314, and (2) because the instant suit is not a suit for appropriation or expropriation. It is obvious that the trial court meant to say that the property was neither taken, damaged or destroyed after the effective date of Act 314, since that is the wording of that provision of the act.
*1246 1. THE PROPERTY WAS NOT TAKEN, DAMAGED OR DESTROYED AFTER THE EFFECTIVE DATE OF ACT 314.
The record reveals that the entire tract in question was appropriated by resolution of the Levee Board on September 4, 1940. Further, the receipt, dated May 13, 1941 and signed by then owner Charles F. Garber, states "21.2 acres land & timber," acknowledges receipt of $522.56, and then states "... in full payment of the above account."
The record also shows that the assessed value of the entire tract in 1939 (which was the year preceding the appropriation) was $360.00. Thus, Charles F. Garber was paid all that the laws required at that time for the taking of the 21.2 acre tract for levee purposes. Further, the use of part of the tract, to dig a borrow pit in late 1940 and early 1941, preserved the Levee Board's servitude over the entire tract. As stated by the Supreme Court in Armstrong v. Red River, Atchafalaya and Bayou Boeuf Levee Board, 278 So.2d 496 (La.1973):
"As to area, the law is well-settled that the use of any part of a continuous tract of land under a servitude preserves the servitude on the entire tract. LSA-C.C. Arts. 656, 789; Trunkline Gas Co. v. Steen, 249 La. 520, 187 So.2d 720 (1966); Ohio Oil Co. v. Ferguson, 213 La. 183, 34 So.2d 746 (1946); Lee v. Giauque, 154 La. 491, 97 So. 669 (1923)."
Accordingly, when the Levee Board had a borrow pit dug on part of the 21.2 acre Garber tract, it preserved its Art. 665 servitude over the entire tract.
Further, Art. 665 creates a legal servitude, which is a limitation on ownership established by law for the benefit of the general public or a particular person. LSA-C.C. Art. 659. As stated by this Court in Young v. Manuel, 385 So.2d 544 (La.App. 3rd Cir.1980):
"Such a servitude imposed by law is a necessary servitude and as such is imprescriptable."
The entire 21.2 acre Garber tract was appropriated in 1940 and paid for in 1941. These actions by the Levee Board asserted in Art. 665 servitude and right of way over the entire tract which has never prescribed. As a matter of fact, but not necessary to our opinion herein, the digging of borrow pits by Ray's Construction Company was completed before the effective date of Act 314. Accordingly, we find that the entire tract was taken, damaged or destroyed for levee purposes before the effective date of Act 314 and, as correctly found by the trial court, Act 314 does not apply to the property for that reason.
Since we find that the Levee Board has a valid Art. 665 servitude over the property, we find that the trial judge was correct in his Reasons for Judgment in the first trial, regarding the eviction suit by the Levee Board, when he stated:
"Finally, the Court concerns itself with the issue of whether or not Adam Percle, a tenant of the Garber family on the land at issue, can be evicted by the Board. It was established by the trial evidence that the Percle trailer lies within the levee servitude. Garber as a lessor can not lease a greater right than he himself has. The power of the Board to appropriate includes the power to evict. The servitude at issue is one imposed by law. One claiming a servitude may assert this right against a lessee. LSA-C.C. Art. 2704."
Accordingly, we find that the Levee Board's servitude gave it the right to evict Mr. Percle.
2. THIS IS NOT A SUIT FOR EXPROPRIATION OR APPROPRIATION
We also agree with the trial court's finding that Act 314 does not apply to the Garber property because this is not a suit for expropriation or appropriation.
Obviously, this is not a suit for compensation for an expropriation, since the State, through its levee boards, may appropriate for levee purposes riparian lands burdened with the Art. 665 servitude, and such an appropriation occurred in this case.
The Garbers intervened in the suit by the Levee Board for the eviction of *1247 Adam Percle. The Garbers' petition asserted that the right of way, acquired by the Levee Board by virtue of its resolution of appropriation, no longer affected the property. The petition alternatively asserted that if the resolution was found to still affect the property, the resolution was unconstitutional because it violated the Garbers' Fourteenth Amendment rights granted by the Constitution of the United States.
In their petition, the Garbers prayed for judgment (1) decreeing that the resolution no longer affected the property; (2) dismissing the Levee Board's petition; and (3) decreeing that the resolution was unconstitutional. The petition, in effect, reveals a suit for a declaratory judgment. It does not pray for compensation for the appropriation of the property. Act 314 provides that it applies:
"... to the determination of just compensation in any expropriation or appropriation suit pending on July 10, 1978, ..."
Since this petition does not seek the "determination of just compensation," Act 314, by its own language, does not apply to the Garbers' intervention.
The Garbers also sued the Levee Board. They asserted in their petition that defendant Ray's Construction Company, at the direction of defendant Levee Board, had begun cutting timber and digging borrow pits on the property. The petition asserted that these actions were without the Garbers' consent and over their objection, and that the defendants had not purchased the land nor offered to pay for damages. They asserted that if this present "trespass" by the defendants was allowed to continue, the property would be irreparably injured and damaged.
The petition prayed for a preliminary injunction, a permanent injunction, and for $500,000 as damages to the property.
Act. 314 provides in pertinent part:
"The compensation defined herein shall apply ... to the determination of just compensation in any expropriation or appropriation suit pending on July 10, 1978, involving lands and improvements taken, damaged or destroyed for levee and levee drainage purposes."
We are of the opinion that this clause of Act 314 makes the act applicable to suits pending on July 10, 1978, for the determination of compensation in any expropriation or appropriation suit, involving property either taken or damaged or destroyed for levee purposes. To take is to appropriate, and vice versa. Boyce Cottonseed Oil Mfg. Co. v. Board of Com'rs of Red River, Atchafalaya, and Bayou Boeuf Levee Dist, 160 La. 727, 107 So. 506 (1926). As discussed above, the entire Garber tract was appropriated by the Levee Board in 1940 from Charles F. Garber. Therefore the entire tract was "taken" at that time. Mr. Garber was fully compensated for the taking of the entire tract, as is shown by the receipt dated May 13, 1941, which he signed. Since the entire tract was "taken," it could no longer be "damaged" or "destroyed" in 1977, by the actions of Ray's Construction Company and the Levee Board, so as to entitle the Garbers to be paid for the same land again.
The Garbers' petition seeks damages for the cutting of timber and the digging of borrow pits on their property in 1977. These acts did not constitute a reappropriation or a new taking of the property. Rather, these acts simply constitute an exercise of the rights granted to the Levee Board by virtue of its appropriation of the property from Charles F. Garber and its payment of compensation to him for that appropriation. The petition does not pray for compensation for the appropriation that occurred in 1940 in which the entire 21.2 acres was taken for levee purposes.
Accordingly, we find that the trial court was correct in its finding that this was not a suit for expropriation or appropriation as contemplated by Act 314 of 1978.
Even if this was a suit for expropriation or appropriation, which we do not find, Act 314 provides in the second paragraph of subpart B that:
"The measure of compensation ... shall be the fair market value of the property taken or destroyed before the proposed taking of the property or construction of the levee or levee drainage *1248 facilities without considering any change in value caused by the construction of the levee or the levee drainage facilities."
Thus, the compensation due for the taking of the Garber property for levee purposes would be the value of the property before the taking of the property, which would be the 1940 fair market value.
The record reveals that in 1940 the Garber tract was swampland with no access by land. Witnesses accepted as experts in real estate appraisal testified as to the fair market value of the property in 1940. This testimony reveals that Charles F. Garber was paid at least the fair market value of his property in 1940 by the Levee Board. Thus, even if this were an appropriation suit as contemplated by Act 314, the Garbers would be entitled to no additional compensation under the act.
For the above and foregoing reasons, the judgment of the trial court is affirmed with the costs of the appeal to be paid by appellants.
AFFIRMED.